UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| ANTHONY RUSSELL WILSON, II, | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| v. | ) | No. 4:19-CV-1196 CAS |
|  | ) |  |
| STEVE LORTS, et al., | ) |  |
|  | ) |  |
| Defendants. | ) |  |

**MEMORANDUM AND ORDER**

This matter is before the Court upon the amended complaint of self-represented litigant Anthony Russell Wilson, II. Doc. 12. The Court previously granted plaintiff in forma pauperis status and reviewed his § 1983 complaint under 28 U.S.C. § 1915. Doc. 9. Based on that review, the Court directed plaintiff to file an amended complaint on a Court-provided form and in compliance with the Court's instructions. The Court warned plaintiff that his amended complaint would also be reviewed under § 1915. For the reasons discussed below, the Court will partially dismiss the amended complaint and will order the Clerk to issue process or cause process to be issued on the non-frivolous portions of the amended complaint. See 28 U.S.C. § 1915(e)(2).

**Legal Standard on Initial Review**

Under 28 U.S.C. § 1915(e)(2), the Court is required to dismiss a complaint filed in forma pauperis if it is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief. To state a claim for relief, a complaint must plead more than "legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action [that are] supported by mere conclusory statements." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). A plaintiff must demonstrate a plausible claim for relief, which is more than a "mere possibility of misconduct." Id. at 679. "A claim has facial plausibility when

the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 678. Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. Id. at 679.

When reviewing a self-represented litigant's complaint under 28 U.S.C. § 1915, the Court accepts the well-pled facts as true, White v. Clark, 750 F.2d 721, 722 (8th Cir. 1984), and liberally construes the complaint. Erickson v. Pardus, 551 U.S. 89, 94 (2007); Haines v. Kerner, 404 U.S. 519, 520 (1972). A "liberal construction" means that if the essence of an allegation is discernible, the district court should construe the plaintiff's complaint in a way that permits his or her claim to be considered within the proper legal framework. Solomon v. Petray, 795 F.3d 777, 787 (8th Cir. 2015). However, even complaints filed by self-represented litigants are required to allege facts which, if true, state a claim for relief as a matter of law. Martin v. Aubuchon, 623 F.2d 1282, 1286 (8th Cir. 1980). See also Stone v. Harry, 364 F.3d 912, 914-15 (8th Cir. 2004) (refusing to supply additional facts or to construct a legal theory for a self-represented plaintiff that assumed facts not pleaded).

**Background**

Plaintiff was a federal pretrial detainee when he brought this action under 42 U.S.C. § 1983. In his complaint, plaintiff named six defendants associated with Phelps County Jail, in both their individual and official capacities: (1) Phelps County Jail Administration; (2) Sergeant Unknown Lorts; (3) Sergeant Unknown Dowdi; (4) Correctional Officer Unknown Jones; (5) Correctional Officer Unknown Reed; and (6) Lieutenant Unknown Shultz.

Plaintiff alleged that on or around May 3, 2018, Sergeant Lorts found plaintiff guilty of a disciplinary violation based on accusations of Correctional Officer Jones without "any fair evaluation of the facts." Doc. 4 at 2. After the finding, plaintiff was locked in a suicide cell "with

2

no bedding, no property (other than the clothing [he] was wearing), no hygiene, no toilet, no sink, no shower, no food and 24 hour lighting" for five days. Id. Plaintiff also asserted that while confined at Phelps County Jail, he was "treated differently than the other inmates and taunted and threatened by Sergeant Dowdi [and] Sergeant Lorts." Id. at 3. Plaintiff alleged his five-day suicide cell placement was in retaliation for the many grievances he had previously filed about the conditions at Phelps County Jail. Plaintiff described his legal claims as: "cruel and unusual punishment, deliberate indifference, and denied civil liberties and due process at Phelps County Jail." Id.

As to defendant Phelps County Jail Administration, plaintiff also alleged he was deprived of his liberty and due process when it "violated their federal contract according to title 18 U.S.C.A. § 4013, title 18 U.S.C.A. § 4806, and also title 28 C.F.R. § 40 standards for Inmate Grievance Procedure, Subpart A and Subpart B; where they have not exercised any firm effort to fully comply with the standards." Doc. 4 at 4.

The Court reviewed plaintiff's complaint under 28 U.S.C. § 1915(e)(2) and found many allegations failed to state a claim. See Doc. 9. Plaintiff's official capacity claims were subject to dismissal because he did not allege Phelps County Jail Administration had an unconstitutional policy or custom, or was deliberately indifferent in failing to train its employees. Additionally, Phelps County Jail Administration was subject to dismissal because a jail is not a suable entity. As to plaintiff's individual capacity claims, the Court found plaintiff did not clearly state which specific factual allegations were being made against each individual defendant. Because the plaintiff is self-represented, the Court directed him to file an amended complaint to cure the pleading deficiencies.

**The Amended Complaint**

Plaintiff filed his amended 42 U.S.C. § 1983 complaint on October 22, 2019, against the same six defendants with spelling changes and the inclusion of full names: (1) Sergeant Steve Lorts; (2) Sergeant Scott Dowdy; (3) Correctional Officer Charlene Jones; (4) Correctional Officer Sarah Reed; (5) Lieutenant Matt Shults; and (6) Phelps County. Defendants Lorts, Dowdy, Reed, and Jones are named in their individual capacities only. Defendant Shults is named in both his individual and official capacities.

Plaintiff asserts similar allegations as in his initial complaint. According to plaintiff, on May 3, 2018, he was placed into a suicide cell by defendants Dowdy, Lorts, Reed, and an unknown officer. Once there, Lorts read a disciplinary report to plaintiff accusing him of a conduct violation based on accusations of defendant Correctional Officer Jones. Lorts "informed [plaintiff] that [he] was guilty of the accusation(s) in the disciplinary report and immediately sentenced [him] to an incalculable amount of days in disciplinary segregation and/or administrative segregation." Doc. 12 at 5 ¶ 1. "Lorts demanded that [plaintiff] sign the accused disciplinary report or either be denied the opportunity to appeal." Id. Plaintiff requested and was denied a "fair evaluation of the facts." Id. Subsequently, plaintiff was locked in a suicide cell for "approximately 5 days with no bedding, no property (other than the clothes [he] was wearing at the time [he] was placed in the suicide cell), no hygiene, no toilet, no sink, no shower, no food, and a 24 hour lighting with nothing but a sewage hole in the floor." Id. Plaintiff states he was allowed out of the suicide cell on the third day when Lorts brought him upstairs to the Sheriff's Department to be interviewed by a Deputy Sheriff Jones.[1] Id. at 6 ¶ 2. Plaintiff was then placed back in the suicide cell under the same

---

[1] The Court notes plaintiff's initial complaint describes being interviewed by "Police Officer Jones," which the Court interpreted as defendant Correctional Officer Jones. See Doc. 4 at 2. It is now clear that the officer Jones who was questioning plaintiff is a different person and not a named defendant in this matter.

conditions for another two days until he was removed, allowed to shower, and placed in a "regular" cell. Id. at 6 ¶¶ 2a-3. Approximately two weeks and two days later, plaintiff was moved to a cell "within the closet area of housing unit G," so defendants Lorts and Jones could allegedly "keep him isolated outside the normal operations of Phelps County Jail." Id. at 7 ¶ 4a.

Plaintiff alleges Lorts violated his due process rights by finding him guilty on the disciplinary violation "without a hearing," where plaintiff could have prepared or presented exculpatory evidence in his defense, presented witnesses in his defense, and possibly presented the Phelps County Jail's videotaped footage of the event in question. Id. at 5 ¶ 1b, 7 ¶ 4. As for his five days in the suicide cell, plaintiff alleges the conditions were "serious deprivations of basic human needs and the minimal civilized measure of life's necessities," such that the conditions constituted an "atypical and significant hardship." Id. at 5 ¶ 1a.

Plaintiff's allegations as to the "deliberately indifferent" five-day suicide cell placement are directed at all five of the individual defendants despite the fact defendant Shults was not present when plaintiff was initially found "guilty" of the violation and placed in the cell. Id. at 5 ¶ 1-1a, 6 ¶ 2a. Plaintiff alleges Shults and the other four individual defendants were aware of the deprivations he was suffering and none of them did anything to "remedy the unconstitutional conditions." Id. at 6 ¶ 2a. Plaintiff also alleges Shults violated his "liberty interest" by "establish[ing] disciplinary hearing procedures for Phelps County Jail that allow[] Correctional Officers, Corporals and Sergeants to force and enforce inmates to sign admissions of guilt or be refused the right to appeal."[2] Id. at 6 ¶ 1c.

Plaintiff also alleges his right to equal protection of the law was violated by Phelps County and defendants Shults, Lorts, and Dowdy because they did not comply with the "inmate grievance

---

[2] Although plaintiff asserts a claim against Shults and his "procedure" of using "force" to get inmates to sign disciplinary reports, it does not appear that plaintiff signed his disciplinary report as "Lorts demanded." Doc. 12 at 5 ¶ 1, 6 ¶ 1c, 7 ¶ 4; see also Doc. 12-1 at 15.

procedure set forth in Title 28 C.F.R. § 40 (Subparts A & B) when they interfered with and allowed the grievance procedure to be conducted and misused outside of code established by Title 18 U.S.C.A. § 4013 and Title 18 U.S.C.A. § 4086 when fulfilling a federal government contract to house federal detainees."[3] Id. at 7 ¶ 4a. Plaintiff argues the actions and procedures used for responding to grievances are "not fair nor effective." Id. In addition, plaintiff argues the grievance process is unfair because it is under the control of Lorts who answers grievances containing allegations against himself. Id. at 7 ¶ 4, 9 ¶ 10. Plaintiff states Shults is aware of the unfairness of this system but does nothing to change it. Id. at 9 ¶ 10a.

As to defendants Lorts and Dowdy, plaintiff also alleges they threatened to physically harm him if he continued to file grievances and warned him about acting inappropriately towards female defendant Correctional Officer Jones. As to Jones, plaintiff asserts she regularly taunted and provoked him when she brought meals to him in his cell. Plaintiff further asserts Jones admitted to fabricating the initial disciplinary report allegations at the suggestion of Lorts. Id. at 7 ¶ 6.

According to plaintiff, defendants Lorts, Dowdy, Jones, and Reed "blatantly" treated him differently than other inmates at the Jail. Specifically, these defendants denied him his personal mail; opened his legal mail outside his presence; turned away his visitors or only allowed them to stay 10 minutes; and, on one occasion, his attorney was not allowed to see him. Id. at 7-8 ¶¶ 6-6a. Plaintiff also alleges Lorts, Dowdy, and Shults denied him recreation outside his cell, medical and psychiatric treatment, access to the Jail's law library, and access to the courts. Id. at 8 ¶ 7-7a.

---

[3] Pursuant to 18 U.S.C. § 4086, the U.S. Marshals "shall provide for the safe-keeping of any person arrested, or held under authority of any enactment of Congress pending commitment to an institution." In broad terms, the Attorney General has delegated responsibility for the safe-keeping of federal pretrial detainees, like plaintiff, to the United States Marshal Service which, in turn, may enter into intergovernmental agreements with state and local facilities and contracts with private entities for the safekeeping, care, and subsistence of prisoners. 18 U.S.C. §§ 4002, 4013.

Plaintiff further alleges defendant Jones took personal items from him, and defendant Dowdy destroyed many of his personal books and papers without compensation. Id. at 8 ¶ 8.

Plaintiff asserts the mistreatment he received by the individual defendants was punishment for using the grievance procedure and the court system. Id. at 8 ¶ 7a. He asserts that prior to the five-day suicide cell placement, he filed multiple grievances at the Phelps County Jail. Id. at 8 ¶ 9. Plaintiff attached twenty-four pages of grievance filings to his complaint which contain complaints about numerous aspects of incarceration. See Doc. 12-1.

For relief, plaintiff seeks money damages. He also requests that the individual defendants be criminally charged and terminated from their employment, and Phelps County Jail be investigated.

**Discussion**

Having carefully reviewed and liberally construed plaintiff's allegations, the Court will dismiss the official capacity claim against defendant Shults as duplicative of the claim against Phelps County. The Court will also dismiss plaintiff's claim against Phelps County for failure to state a claim upon which relief may be granted. The Court will, however, direct the Clerk of Court to issue process on defendants Sergeant Lorts, Sergeant Dowdy, Correctional Officer Jones, Correctional Officer Reed, and Lieutenant Shults, in their individual capacities, on plaintiff's claims of violations of the Due Process Clause, the Eighth Amendment, and First Amendment retaliation.

A. **Official Capacity Claim against Shults**

In an official capacity claim against an individual, the claim is actually "against the governmental entity itself." White v. Jackson, 865 F.3d 1064, 1075 (8th Cir. 2017). Thus, a "suit against a public employee in his or her official capacity is merely a suit against the public employer." Johnson v. Outboard Marine Corp., 172 F.3d 531, 535 (8th Cir. 1999). See also

Brewington v. Keener, 902 F.3d 796, 800 (8th Cir. 2018) (explaining that official capacity suit against sheriff and his deputy "must be treated as a suit against the County"); Kelly v. City of Omaha, Neb., 813 F.3d 1070, 1075 (8th Cir. 2016) (stating a "plaintiff who sues public employees in their official, rather than individual, capacities sues only the public employer"). In order to prevail on an official capacity claim, the plaintiff must establish the governmental entity's liability for the alleged conduct. Id. at 1075.

Individual defendant Shults is employed by the Phelps County Jail. As such, plaintiff's official capacity claim against him is actually a claim against his employer, Phelps County. Because "a suit against a government officer in his official capacity is functionally equivalent to a suit against the employing governmental entity," plaintiff's official capacity claim against Shults is duplicative or redundant of his claim against Phelps County, and therefore subject to dismissal. See Veatch v. Bartels Lutheran Home, 627 F.3d 1254, 1257 (8th Cir. 2010). Plaintiff's claims brought against defendant Shults in his official capacity will be dismissed.

**B.     Claims against Defendant Phelps County**

A local governing body, like Phelps County, can be sued directly under § 1983. Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 690 (1978). Liability may attach if the constitutional violation "resulted from (1) an official municipal policy, (2) an unofficial custom, or (3) a deliberately indifferent failure to train or supervise." Mick v. Raines, 883 F.3d 1075, 1079 (8th Cir. 2018). See also Marsh v. Phelps Cnty., 902 F.3d 745, 751 (8th Cir. 2018) (recognizing "claims challenging an unconstitutional policy or custom, or those based on a theory of inadequate training, which is an extension of the same").

Here, plaintiff mentions defendant Phelps County only once in his complaint. He alleges a violation of his right to equal protection based on a failure to comply with federal requirements for the provision of sufficient minimum grievance procedures in facilities holding federal

8

prisoners.  See 28 C.F.R. § 40.  Specifically, plaintiff claims the Jail's procedure for handling inmate grievances is unfair and ineffective because, in some cases, the person responding to the grievance is the same person that the grievance is against.

To the extent plaintiff seeks to assert a § 1983 claim against Phelps County based on its handling of grievances, such allegations fail to state a constitutional violation.  It is well established there is no federal constitutional right to an effective prison grievance procedure and if a state elects to provide a grievance mechanism, violations thereof will not give rise to a § 1983 claim. Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993) (grievance procedure is procedural right only and does not confer substantive right on inmate); Flick v. Alba, 932 F.2d 728, 729 (8th Cir. 1991) ("[T]he federal regulations providing for a[] [prison] administrative remedy procedure do not in and of themselves create a liberty interest in access to that procedure. When the claim underlying the administrative grievance involves a constitutional right, the prisoner's right to petition the government for redress is the right of access to the courts.").  See also Booker v. South Carolina Dep't of Corr., 855 F.3d 533, 541 (4th Cir. 2017) (citing Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994)) (stating "a clear rule: inmates have no constitutional entitlement or due process interest in access to a grievance procedure."); Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003) (holding a prisoner has no constitutional right to an effective grievance or appeal procedure). Plaintiff's allegations concerning the handling of his grievances fail to give rise to a federal civil rights claim against Phelps County and are therefore subject to dismissal.  Plaintiff's claims against defendant Phelps County will be dismissed.

### C. Individual Capacity Claims

Plaintiff was a federal pretrial detainee when the incidents complained about in his amended complaint occurred.  When evaluating the constitutionality of pretrial-detainee conditions, "the proper inquiry is whether those conditions amount to punishment of the detainee."

9

Bell v. Wolfish, 441 U.S. 520, 535 (1979). "For under the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law." Id. Furthermore, "the Government concededly may detain him to ensure his presence at trial and may subject him to the restrictions and conditions of the detention facility so long as those conditions and restrictions do not amount to punishment, or otherwise violate the Constitution." Id. at 536-37. See also Smith v. Conway Cnty., Ark., 759 F.3d 853, 858 (8th Cir. 2014) (stating "the Due Process Clause prohibits any punishment of a pretrial detainee, be that punishment cruel-and-unusual or not"). Although some loss of freedom of choice and privacy are inherent aspects of confinement, "if a restriction or condition is not reasonably related to a legitimate goal – if it is arbitrary or purposeless – a court permissibly may infer that the purpose of the governmental action is punishment." Bell, 441 U.S. at 539.

Plaintiff also has the Constitutional protection of the Eighth Amendment which prohibits cruel and unusual punishment and limits conditions of confinement. Robinson v. California, 370 U.S. 660 (1962); Rhodes v. Chapman, 452 U.S. 337 (1981). The Supreme Court has explained this limit as a prohibition on punishments that "involve the unnecessary and wanton infliction of pain" including those that are "totally without penological justification." Rhodes, 452 U.S. at 346 (quoting Gregg v. Georgia, 428 U.S. 153, 173, 183 (1976)).

According to plaintiff's allegations, all five individual defendants were aware of the conditions and length of plaintiff's multi-day confinement in the suicide cell and deliberately disregarded the excessive risk to plaintiff's health and safety caused by five days without food. See Farmer v. Brennan, 511 U.S. 825, 847 (1994) ("a prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it."). Although Lieutenant Shults was not present when plaintiff was initially

placed in the suicide cell, plaintiff alleges that Shults, as the supervisor, was deliberately indifferent to or tacitly authorized the offending acts. See Tlamka v. Serrell, 244 F.3d 628, 635 (8th Cir. 2001) (standard for supervisor's individual liability under § 1983). As to defendants Lorts, Dowdy, and Shults, plaintiff alleges these defendants denied his requests for medical and psychiatric treatment. See Estelle v. Gamble, 429 U.S. 97, 104-05 (1976) (Eighth Amendment deliberate indifference to serious medical needs violation may be demonstrated by prison officials who intentionally deny or delay access to medical care). These allegations as to conditions of confinement are sufficient to state a claim of punishment under the Due Process Clause and the Eighth Amendment. See also Wilson v. Seiter, 501 U.S. 294, 304 (1991) (Supreme Court noted in dicta it could be an Eighth Amendment violation to deny a prisoner food); Simmons v. Cook, 154 F.3d 805, 808 (8th Cir. 1998) (finding Eighth Amendment violation where prisoner denied four consecutive meals over two days).

In addition, plaintiff's complaint alleges equal protection violations by stating the five individual defendants treated plaintiff differently than other inmates. The Equal Protection Clause provides, "No State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. "The purpose of the equal protection clause . . . is to secure every person within the state's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents." Sunday Lake Iron Co. v. Wakefield Twp., 247 U.S. 350, 352 (1918). Unequal treatment of "those who are entitled to be treated alike[] is not a denial of equal protection unless there is shown to be present in it an element of intentional or purposeful discrimination." Batra v. Bd. of Regents of Univ. of Neb., 79 F.3d 717, 721 (8th Cir. 1996) (quoting Snowden v. Hughes, 321 U.S. 1, 8 (1944)). Plaintiff seems to allege that the reason for his disparate treatment by the individual defendants is because he filed multiple grievances at the Phelps County Jail. He does

not allege discrimination based on a protected class but, instead, retaliation by defendants due to his grievance filings. The Court finds plaintiff's equal protection claims do not survive frivolity review and will be dismissed.

"[T]he First Amendment right to petition for redress of grievances includes redress under established prison grievance procedures." Dixon v. Brown, 38 F.3d 379, 379 (8th Cir. 1994) (citing Sprouse v. Babcock, 870 F.2d 450 (8th Cir. 1989)). "Although the filing of a false disciplinary charge is not itself actionable under § 1983, the filing of a disciplinary charge becomes actionable if done in retaliation for the inmate's filing of a grievance." Id. In this case, plaintiff alleges he was accused and found guilty of a false disciplinary charge that resulted in him being confined in a suicide cell for five days. He asserts that this disciplinary charge, and other threatening, taunting, and discriminatory treatment he received from the five individual defendants was in retaliation for the filing of many grievances. Plaintiff sufficiently states a First Amendment retaliation claim against the individual defendants.

However, to the extent plaintiff attempts to state a First Amendment claim for violation of his right to access the courts, such a claim fails. The Eighth Circuit has recognized that when bringing an access to courts claim, it is insufficient to merely allege a denial of access to a law library or other resources, even if the denial is systemic. Sabers v. Delano, 100 F.3d 82, 84 (8th Cir. 1996) (per curiam) (citing Lewis v. Casey, 518 U.S. 343, 353 n.4 (1996)). Instead, the plaintiff must plead that the lack of the library or other resource deprived him of some specific opportunity to defend himself, or advance a viable legal claim, in a criminal appeal, post-conviction matter, or civil rights action seeking to vindicate constitutional rights. Id. Speculation that injuries might occur or could have occurred is insufficient. See Hartsfield v. Nichols, 511 F.3d 826, 833 (8th Cir. 2008) ("[a]bsent an articulation of how the alleged wrongful conduct actually blocked [the prisoner's] access to filing a complaint, or caused a filed complaint to be deficient, [the prisoner's]

alleged injuries are merely speculative."). To state a claim for a violation of this right, inmates must assert they suffered an actual injury to pending or contemplated legal claims. See Myers v. Hundley, 101 F.3d 542, 544 (8th Cir. 1996). In this case, plaintiff merely alleges a denial of access to the law library and claims it has "interfered with the requisite legal research for litigation and appeal(s)." Doc. 12 at 8 ¶ 7. Plaintiff's allegations are not sufficient to state a First Amendment claim for denial of access to courts.

Pretrial detainees are afforded greater protection than convicted inmates in the sense that the Due Process Clause prohibits the detainee from being punished. Bearing that in mind, and accepting plaintiff's allegations as true, plaintiff's individual capacity claims against Sergeant Lorts, Sergeant Dowdy, Correctional Officer Jones, Correctional Officer Reed, and Lieutenant Shults are sufficient to survive initial review pursuant to § 1915, except as to his equal protection and access to the courts claims. Therefore, the Clerk of Court will be directed to issue process against these defendants in their individual capacities as to plaintiff's Due Process, Eighth Amendment, and First Amendment retaliation claims.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's official capacity claims against defendant Matt Shults are **DISMISSED without prejudice**. 28 U.S.C. § 1915(e)(2)(B).

**IT IS FURTHER ORDERED** that the Clerk shall **not** issue process or cause process to issue upon the complaint as to defendant Phelps County because, as to this defendant, the amended complaint is legally frivolous or fails to state a claim upon which relief can be granted, or both. Plaintiff's claims against defendant Phelps County are **DISMISSED without prejudice**. 28 U.S.C. § 1915(e)(2)(B).

**IT IS FURTHER ORDERED** that plaintiff's equal protection claims and First Amendment access to the court claims against defendants Steve Lorts, Scott Dowdy, Charlene

Jones, Sarah Reed, and Matt Shults, in their individual capacities, are **DISMISSED without prejudice**, for failure to state a claim upon which relief can be granted. 28 U.S.C. § 1915(e)(2)(B).

**IT IS FURTHER ORDERED** that the Clerk shall issue process or cause process to issue upon the amended complaint as to defendants Steve Lorts, Scott Dowdy, Charlene Jones, Sarah Reed, and Matt Shults, in their individual capacities, with regard to plaintiff's allegations of violations of the Due Process Clause, the Eighth Amendment, and First Amendment retaliation.

**IT IS FURTHER ORDERED** that on the Court's own motion, the Clerk of the Court shall amend the caption of this case to read as follows:

> Anthony Russell Wilson II, plaintiff, v. Steve Lorts, et al., defendants, Case No. 4:19-CV-1196 CAS.

The parties shall use the amended caption on all future filings.

**IT IS FURTHER ORDERED** that the Clerk of the Court shall change the short title of this case to read Wilson v. Lorts, et al.

**IT IS FURTHER ORDERED** that an appeal from this partial dismissal would not be taken in good faith.

An Order of Partial Dismissal will accompany this Memorandum and Order.

_____
**CHARLES A. SHAW**
**UNITED STATES DISTRICT JUDGE**

Dated this <u>6th</u> day of January, 2020.