UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| ANTHONY RUSSELL WILSON, II, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:19CV1196 HEA |
| | ) | |
| STEVE LORTS, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION, MEMORANDUM AND ORDER

This matter is before the court on remaining Defendants Lorts, Dowdy, Jones, Reed, and Shults' Motion for Summary Judgment, [Doc. No. 33]. Plaintiff has failed to respond to the motion. For the reasons articulated below Defendants' Motion for Summary Judgment will be granted.

### Facts and Background

Plaintiff filed this action under the provisions of 42 U.S.C. § 1983 related to his confinement in the Phelps County, Missouri jail. Plaintiff claims on May 3, 2018 he was placed into a suicide cell by defendants Dowdy, Lorts, Reed, and an unknown officer. Once there, Lorts read a disciplinary report to plaintiff accusing him of a conduct violation based on accusations of defendant Correctional Officer Jones. Lorts "informed [plaintiff] that [he] was guilty of the accusation(s) in the disciplinary report and immediately sentenced [him] to an incalculable amount of days in disciplinary segregation and/or administrative segregation." "Lorts

demanded that [plaintiff] sign the accused disciplinary report or either be denied the opportunity to appeal."   Plaintiff requested and was denied a "fair evaluation of the facts." Subsequently, plaintiff was locked in a suicide cell for "approximately 5 days with no bedding, no property (other than the clothes [he] was wearing at the time [he] was placed in the suicide cell), no hygiene, no toilet, no sink, no shower, no food, and a 24 hour lighting with nothing but a sewage hole in the floor." Plaintiff states he was allowed out of the suicide cell on the third day when Lorts brought him upstairs to the Sheriff's Department to be interviewed by a Deputy Sheriff Jones.   Plaintiff was then placed back in the suicide cell under the same conditions for another two days until he was removed, allowed to shower, and placed in a "regular" cell. Approximately two weeks and two days later, plaintiff was moved to a cell "within the closet area of housing unit G," so defendants Lorts and Jones could allegedly "keep him isolated outside the normal operations of Phelps County Jail."

Plaintiff alleges Lorts violated his due process rights by finding him guilty on the disciplinary violation "without a hearing," where plaintiff could have prepared or presented exculpatory evidence in his defense, presented witnesses in his defense, and possibly presented the Phelps County Jail's videotaped footage of the event in question. As for his five days in the suicide cell, plaintiff alleges the conditions were "serious deprivations of basic human needs and the minimal

civilized measure of life's necessities," such that the conditions constituted an "atypical and significant hardship."

Plaintiff's allegations as to the "deliberately indifferent" five-day suicide cell placement are directed at all five of the individual defendants despite the fact defendant Shults was not present when plaintiff was initially found "guilty" of the violation and placed in the cell. Plaintiff alleges Shults and the other four individual defendants were aware of the deprivations he was suffering and none of them did anything to "remedy the unconstitutional conditions." Plaintiff also alleges Shults violated his "liberty interest" by "establish[ing] disciplinary hearing procedures for Phelps County Jail that allow[] Correctional Officers, Corporals and Sergeants to force and enforce inmates to sign admissions of guilt or be refused the right to appeal."

Plaintiff also alleges his right to equal protection of the law was violated by Phelps County and defendants Shults, Lorts, and Dowdy because they did not comply with the "inmate grievance procedure set forth in Title 28 C.F.R. § 40 (Subparts A & B) when they interfered with and allowed the grievance procedure to be conducted and misused outside of code established by Title 18 U.S.C.A. § 4013 and Title 18 U.S.C.A. § 4086 when fulfilling a federal government contract to house federal detainees." Plaintiff argues the actions and procedures used for responding to grievances are "not fair nor effective." In addition, plaintiff argues

the grievance process is unfair because it is under the control of Lorts who answers grievances containing allegations against himself.   Plaintiff states Shults is aware of the unfairness of this system but does nothing to change it.

As to defendants Lorts and Dowdy, plaintiff also alleges they threatened to physically harm him if he continued to file grievances and warned him about acting inappropriately towards female defendant Correctional Officer Jones. As to Jones, plaintiff asserts she regularly taunted and provoked him when she brought meals to him in his cell. Plaintiff further asserts Jones admitted to fabricating the initial disciplinary report allegations at the suggestion of Lorts.

According to plaintiff, defendants Lorts, Dowdy, Jones, and Reed "blatantly" treated him differently than other inmates at the Jail. Specifically, these defendants denied him his personal mail; opened his legal mail outside his presence; turned away his visitors or only allowed them to stay 10 minutes; and, on one occasion, his attorney was not allowed to see him. Plaintiff also alleges Lorts, Dowdy, and Shults denied him recreation outside his cell, medical and psychiatric treatment, access to the Jail's law library, and access to the courts. Plaintiff further alleges defendant Jones took personal items from him, and defendant Dowdy destroyed many of his personal books and papers without compensation.

Plaintiff asserts the mistreatment he received by the individual defendants was punishment for using the grievance procedure and the court system. He asserts

4

that prior to the five-day suicide cell placement, he filed multiple grievances at the

Phelps County Jail.

Defendants moved for summary judgment on November 6, 2020, filing with

their Motion a Memorandum in Support and a Statement of Uncontroverted

Material Facts ("SOF"). Plaintiff filed no opposition whatsoever to Defendants'

Motion. Under the Local Rules, Plaintiff's failure to respond in any fashion to

Defendants' Motion means that "[a]ll matters set forth in [Defendants' SOF] shall

be deemed admitted for purposes of summary judgment." L.R. 4.01(E); *see also*

*Freeman v. Adams*, No. 1:12-cv-86-SNLJ, 2014 WL 1056760, at \*5 n.4 (E.D. Mo.

Mar. 19, 2014) ("The movant's [] facts are deemed admitted if not specifically

controverted by the party opposing the motion with specific references to portions

of the record as required by Local Rule 4.01(E) and Federal Rule of Civil

Procedure 56(c)(1).").

The Court will thus set out the undisputed factual background as supplied by

Defendants in their Motion and SOF.

Plaintiff was booked into the Phelps County Jail as a pre-trial detainee on

November 29, 2017. He was released from the Phelps County Jail on June 28,

2019.

On May 3, 2018, Plaintiff received discipline of 14 days of lock down

time in response to a report of a major offense by Plaintiff, detailed in the report.

Three Phelps County Officers, including the officer reporting the offense by Plaintiff, signed the May 3, 2018 disciplinary form, but Plaintiff refused to sign it, and did not request an appeal.

Plaintiff filed a grievance on the jail's Edge Exchange communication system on May 27, 2018 regarding the May 3, 2018 incident. Sergeant Steve Lorts responded to the May 27, 2018 grievance that Plaintiff did not sign the May 3, 2018 disciplinary violation or request an appeal. Sergeant Lorts also responded that Plaintiff's rights were not violated.

On Monday, May 7, 2018, during his disciplinary lock down, Plaintiff refused breakfast and lunch, as documented on the Phelps County Jail Control Log. Plaintiff was not denied food during his confinement in the Phelps County Jail, although he did refuse breakfast and lunch on May 7, 2018.

Plaintiff was not denied bedding or use of a shower or toilet during his confinement in the Phelps County Jail. Plaintiff was not retaliated against for filing grievances. Plaintiff's constitutional rights were not violated during his confinement.

Plaintiff has offered no medical testimony to support any allegations of injury or medical issues related to his confinement in the Phelps County Jail. Phelps County Jail staff, including Defendants, responded to each of Plaintiff's grievances during his confinement in the Phelps County Jail.

6

## Summary Judgment Standard

"Summary judgment is proper where the evidence, when viewed in a light most favorable to the non-moving party, indicates that no genuine [dispute] of material fact exists and that the moving party is entitled to judgment as a matter of law." *Davison v. City of Minneapolis, Minn*., 490 F.3d 648, 654 (8th Cir. 2007); Fed. R. Civ. P. 56(a). Summary judgment is not appropriate if there are factual disputes that may affect the outcome of the case under the applicable substantive law. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). A dispute of material fact is genuine if the evidence would allow a reasonable jury to return a verdict for the non-moving party. *Id*. "The basic inquiry is whether it is so one-sided that one party must prevail as a matter of law." *Diesel Machinery, Inc. v. B.R. Lee Industries, Inc.*, 418 F.3d 820, 832 (8th Cir. 2005) (internal quotation marks and citation omitted). The moving party has the initial burden of demonstrating the absence of a genuine issue of material fact. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (citation omitted). Once the moving party has met its burden, "[t]he nonmovant must do more than simply show that there is some metaphysical doubt as to the material facts and must come forward with specific facts showing that there is a genuine issue for trial." *Id*. (internal quotation marks and citation omitted).

To survive a motion for summary judgment, the "nonmoving party must

'substantiate his allegations with sufficient probative evidence [that] would permit a finding in [his] favor based on more than mere speculation, conjecture, or fantasy.'" *Putman v. Unity Health System*, 348 F.3d 732, 733-34 (8th Cir. 2003) (quoting *Wilson v. Int'l Bus. Machs. Corp.*, 62 F.3d 237, 241 (8th Cir. 1995)). The nonmoving party may not merely point to unsupported self-serving allegations but must substantiate allegations with sufficient probative evidence that would permit a finding in his or her favor. *Wilson,* 62 F.3d 237, 241 (8th Cir. 1995). "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]." *Anderson,* 477 U.S. 242 at 252; *Davidson & Associates v. Jung,* 422 F.3d 630, 638 (8th Cir. 2005). "Simply referencing the complaint, or alleging that a fact is otherwise, is insufficient to show there is a genuine issue for trial." *Kountze ex rel. Hitchcock Foundation v. Gaines,* 2008 WL 2609197 at *3 (8th Cir. 2008).

Defendants move for summary judgment based Plaintiff's failure to set forth the requirements of his claims and qualified immunity.

## Discussion

## Conditions of Confinement

Because Plaintiff was a pretrial detainee, his conditions-of-confinement claims are evaluated under the Fourteenth Amendment. *See Bell v. Wolfish*, 441

U.S. 520, 535 n.16 (1979). *Bell* established that "the government may detain

defendants pretrial and may subject them to the restrictions and conditions of a

detention facility so long as those conditions and restrictions do not amount to

punishment, or otherwise violate the Constitution." *Stearns v. Inmate Servs. Corp.*,

957 F.3d 902, 907 (8th Cir. 2020) (citation, quotation marks, and alterations

omitted). Conditions of confinement amount to punishment when they were

intentionally punitive or when they were "not reasonably related to a legitimate

governmental purpose or were excessive in relation to that purpose." *Id.*

The undisputed facts establish Plaintiff has no actual injury. There is no

medical evidence to support any alleged injury in order to state an Eighth

Amendment violation.   Plaintiff claims he was denied food.   The undisputed facts

establish that he was not denied food, and Plaintiff has presented nothing to

controvert the evidence in the record.   Although Plaintiff himself refused breakfast

and lunch on May 7, 2018, he himself caused the lack of food on that day. Plaintiff

was not denied bedding or use of a shower or toilet during his confinement.

Plaintiff has failed to controvert the admissible evidence which establishes this.

**First Amendment Retaliation**

"[A]s a general matter the First Amendment prohibits government officials

from subjecting an individual to retaliatory actions" for engaging in protected

speech. *Hartman v. Moore*, 547 U.S. 250, 256 (2006); *see also Nieves v. Bartlett*,

139 S. Ct. 1715, 1722, (2019). Additionally, in the Eighth Circuit, it has long been clearly established that a plaintiff has a "right to be free from retaliation for availing oneself of the prison grievance process." *Santiago v. Blair*, 707 F.3d 984, 991 (8th Cir. 2013); *see also Haynes v. Stephenson*, 588 F.3d 1152, 1155-56 (8th Cir. 2009) ("The filing of a prison grievance, like the filing of an inmate lawsuit, is protected First Amendment activity.") (internal quotation marks and citation omitted); *Sprouse v. Babcock*, 870 F.2d 450, 452 (8th Cir. 1994).

To establish a First Amendment claim of retaliation under 42 U.S.C. § 1983, a plaintiff must allege that (1) he exercised a constitutionally protected right, (2) a governmental official took adverse action against him, and (3) the adverse action was motivated at least in part by the exercise of the constitutional right. *See Peterson v. Kopp*, 754 F.3d 594, 602 (8th Cir. 2014) (citing *Revels v. Vincenz*, 382 F.3d 870, 876 (8th Cir. 2004)). To prevail on a retaliation claim, a plaintiff must prove that retaliation was "the actual motivating factor" for the alleged adverse action. *Goff v. Burton*, 7 F.3d 734, 737 (8th Cir. 1993). Thus, to survive Defendants' Motion for Summary Judgment, Plaintiff must provide evidence that Defendants acted in retaliation for Plaintiff's exercise of his protected First Amendment rights.

Defendants did not retaliate against Plaintiff.   Plaintiff received a disciplinary form, but he refused to sign the form and did not request an appeal.

He was not threatened, taunted, or discriminated against because he filed

grievances.   The jail staff responded to his grievances.   Plaintiff fails to

controvert the evidence establishing he was not retaliated against for filing any

grievances.

**Qualified Immunity**

> "Qualified immunity shields public officials from liability for civil damages
> if their conduct did not 'violate clearly established statutory or constitutional
> rights of which a reasonable person would have known.'" *Turning Point
> USA at Ark. St. Univ. v. Rhodes*, 973 F.3d 868, 875 (8th Cir. 2020) (citation
> omitted), *cert. denied*, *Hoggard v. Rhodes*, —— U.S. ——, 141 S.Ct. 2421, –
> — L.Ed.2d —— (2021)). We determine "(1) whether the facts shown by the
> plaintiff make out a violation of a constitutional or statutory right, and (2)
> whether that right was clearly established at the time of the defendant's
> alleged misconduct." *Id.* (cleaned up).

*Intervarsity Christian Fellowship/USA v. Univ. of Iowa*, No. 19-3389, 2021 WL

3008743, at *5 (8th Cir. July 16, 2021).

Plaintiff has failed to establish any violation of his constitutional rights.

Defendants are therefore entitled to qualified immunity

### Conclusion

Plaintiff has failed to present a violation of any constitutional rights, and

therefore, Defendants are entitled to qualified immunity.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary

Judgment [Doc. No. 33] is **GRANTED**.

A separate judgment is entered this same date.

Dated this 20th day of August 2021.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE